UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Lorish and Senior Judge Annunziata

JAMES DAVIS

v.      Record No. 0077-22-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
JUNE 28, 2022

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A.B. Willis, Judge

(James Joseph Ilijevich, on brief), for appellant.

(Jason S. Miyares, Attorney General; Leanna C. Minix, Assistant
Attorney General, on brief), for appellee.


James Davis (appellant) appeals his sentence, following an *Alford*[1] plea, for attempted

murder, malicious wounding, use of a firearm in commission of a felony, abduction, attempted

strangulation, misdemeanor brandishing a firearm, and misdemeanor assault and battery, in

violation of Code §§ 18.2-26, 18.2-32, 18.2-51, 18.2-53.1, 18.2-47, 18.2-51.6, 18.2-282, and

18.2-57.2.  Appellant asserts that the Circuit Court of Stafford County (trial court) abused its

discretion when it admitted a Court of Appeals of Virginia opinion regarding appellant's previous

manslaughter conviction and direct testimony from a victim of his 1980 conviction during his

sentencing hearing.  Appellant further argues that the trial court erred when it imposed a sentence

that exceeded the recommended sentencing guidelines.

After examining the briefs and record in this case, the panel unanimously holds that oral

argument is unnecessary because "the dispositive" issues in this appeal have been "authoritatively

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] *North Carolina v. Alford*, 400 U.S. 25 (1970).

decided, and the appellant has not argued that the case law should be overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

## BACKGROUND

Under settled principles, we state the facts in the light most favorable to the Commonwealth, the prevailing party below. *Gerald v. Commonwealth*, 295 Va. 469, 472-73 (2018). Appellant entered *Alford*[2] pleas to attempted murder, malicious wounding, use of a firearm in commission of a felony, abduction, attempted strangulation, misdemeanor brandishing a firearm, and misdemeanor assault and battery.

The Commonwealth proffered that on September 12, 2019, Drexel Mitchell approached Stafford County Sheriff's Deputy Aubrecht in a post office parking lot asking for help for his mother, Blanche Mitchell. Mitchell told Deputy Aubrecht that her live-in fiancé, appellant, had assaulted her the night before.

On September 11, 2019, Mitchell and appellant argued about his drinking. Appellant was heavily intoxicated and causing a disturbance, so Mitchell asked him to leave the residence. The pair continued to argue for some time until Mitchell sought to separate herself from appellant and withdrew to the master bedroom where she locked the door. Appellant followed and kicked in the door. He proceeded to his side of the bed where he retrieved an object from under the mattress and held it behind his back. He approached Mitchell and asked her "who do you belong to?" to which she responded, "no one." Appellant pulled a gun out from behind his back and pointed it at Mitchell. He told her "That's a mistake. You belong to me. If I can't have you, no one will. I won't live without you, and we can die together."

---

[2] "When offering an *Alford* plea of guilty, a defendant asserts his innocence but admits that sufficient evidence exists to convict him of the offense." *Ramsey v. Commonwealth*, 65 Va. App. 593, 596 n.1 (2015).

Appellant struck Mitchell in the head with the gun and shoved it in her mouth. He stated, "I'm going to kill you and we are both going to die and go to hell." Mitchell felt her head and observed that she had a laceration that was bleeding. Appellant knocked Mitchell onto the bed, grabbed her neck, and squeezed. Mitchell unsuccessfully tried to force appellant off her. While Mitchell tried to escape, appellant repeatedly threatened to kill her. Finally, he released Mitchell and directed her to clean herself up. Mitchell asked to be taken to the hospital, but appellant refused. Instead, he locked the bedroom door and told her to go to bed. Appellant then laid in bed with his gun and fell asleep. Mitchell laid next to him too afraid to move. At 4:30 a.m., Mitchell dressed as if she were going to work, woke her son, and left the residence. Mitchell intended to meet her sister at the post office when she encountered Deputy Aubrecht.

Pursuant to a warrant, the deputies searched Mitchell's home. Deputies found empty alcohol bottles, a bloody pillowcase on the bed, and a bloody towel on the floor next to the bedroom. Deputies also found a gun matching Mitchell's description under appellant's side of the bed. The revolver was listed as stolen by the Norfolk Police Department. Mitchell could not be eliminated as a major contributor from the DNA mixture profile from the muzzle at the end of the revolver's barrel, and appellant could not be eliminated as a major contributor of the Y chromosome DNA mixture profile from the revolver.

Appellant's counsel added that because of appellant's two predicate priors, a finding of guilt could have resulted in a mandatory life sentence. The *Alford* plea, counsel noted, removed the mandatory life provision and that is why appellant agreed to plead guilty. Additionally, counsel noted that appellant had a relationship with Mitchell before he was incarcerated in 1980. The two had maintained contact over the decades and had recently rekindled the relationship. Appellant agreed that the evidence the Commonwealth proffered was accurate. After

considering the evidence and appellant's pleas, the trial court accepted the plea agreement and appellant's *Alford* pleas as freely and voluntarily made and convicted appellant.

At sentencing, the trial court took judicial notice that appellant pled no contest to the charges as part of a plea agreement with the Commonwealth and that the court accepted those pleas and ordered a presentence report which the court timely received. The court corrected the presentence report to show that appellant was convicted of domestic assault and battery in Norfolk in 1994.

The Commonwealth then introduced the plea agreement, the DNA certificate of analysis, forensic nurse strangulation tool report used by Mitchell, and Mitchell's medical records. The records indicated that after the incident she complained of a headache, facial pain, and had a superficial laceration roughly four centimeters long on her scalp. The Commonwealth also introduced crime scene photos of the firearm used, the bedroom where the attack occurred, and a photo of Mitchell's scalp laceration.

Over appellant's objection, an incident report from the Norfolk Police Department stating that the firearm recovered from appellant had been stolen in December 2018 was also received into evidence. The court accepted the report but noted that it would not be used to prove that appellant stole the weapon but rather that it was the weapon recovered at the home.

The Commonwealth played recorded jail calls between appellant and his sister, where appellant directed his sister to contact Mitchell for him. The Commonwealth offered appellant's criminal record and certified prior convictions without objection. Over objection, the trial court received an opinion from this Court which examined appellant's previous manslaughter conviction as rebuttal character evidence to appellant's psychological report.

The Commonwealth also called Peppi Schwartz Dayton[3] to testify as rebuttal character witness to appellant's psychological report. Appellant objected to Dayton's testimony on relevancy grounds.[4] The trial court allowed the evidence as "relevant, [and noted it would] give it the appropriate weight that it needs." Dayton testified that she believed appellant would be incarcerated for a significant time and had hoped that his original full sentence would be carried out. She noted that she would be concerned if appellant was released again during his lifetime.

Mitchell also testified at the hearing, and the court acknowledged that it had received her victim impact statement. Mitchell recounted that she and appellant had met when they were in high school and began a relationship shortly thereafter. The relationship ended when appellant was arrested. In 2018, appellant reached out to Mitchell through Facebook and they rekindled their previous relationship. Mitchell was aware that he had been incarcerated and could be violent, but she never knew the details of his crimes. At the time of the incident, appellant and Mitchell were engaged. Mitchell testified that if she had known more about his past, she would not have welcomed him into her home. Mitchell recounted the events of September 11, 2019, for the court.

Mitchell testified that "[n]ot in a million years could you have convinced me that he would have done something like that." She testified that she received calls from appellant's sister shortly after his incarceration in September 2019. Mitchell stated that her "greatest fear is that [appellant] will get out and that he will come back to finish what he started." Mitchell continued "my thought is if [appellant] could do this to me, someone that he claims to love, I can only imagine what he

---

[3] Dayton had been a victim of appellant's 1980 convictions.

[4] Although the psychological report referenced by the Commonwealth, appellant's counsel, and the trial court had not been received into the record at the time of this objection, both counsel agreed that it would be offered into evidence during appellant's case-in-chief and that the Commonwealth could offer their rebuttal evidence before the report's entry into evidence.

would do to a stranger who crossed him." She stated that she has not felt safe in her home since this incident, which occurred nearly two years ago.

Appellant offered the psychological report of himself and showed the court body camera footage of his arrest on September 12, 2019. Appellant then recounted his relationship with Mitchell when they were in high school and noted that it was interrupted when he was first incarcerated in 1979. He admitted to being incarcerated again in 2005 for another substantial period. He testified that on the evening of this incident that he had taken a large dose of erectile dysfunction pills and explained that sometimes when he took large quantities of these pills, he had strange desires. He stated that once while driving with his sister, he felt the desire to jump out of the car and another time he wanted to jump through a window. On September 11, he experienced an excruciating headache and felt like he was going to die. He claimed he was not drunk but very ill and he had asked for help but did not get it. Finally, appellant claimed that he blacked out and cannot remember anything else that happened that evening.

After appellant rested, the Commonwealth argued that he should be sentenced above the guidelines.[5] Appellant showed no remorse and disassociated himself from the crime when he acknowledged Mitchell as the victim but not himself as the perpetrator. The Commonwealth emphasized the severity of the assault and appellant's multiple threats to kill Mitchell and that Mitchell worries what appellant will do if he is paroled. Although appellant claims that his significant years of incarceration have led him to be violent as suggested in the psychological report, the Commonwealth maintained that he was violent before he was incarcerated as evident of his 1980 conviction for rape and sodomy and his 2005 manslaughter conviction. The Commonwealth

---

[5] The sentencing guidelines recommended appellant be sentenced to twelve years, three months on the low end and twenty years, seven months on the high end with a mid-point of sixteen years, five months.

concluded that appellant has a dark obsession with Mitchell which will only be stopped if he is sentenced above the guidelines.

Appellant argued that he should be sentenced within the guidelines. Although there were discussions about his drinking, Mitchell testified that there were no problems in the relationship until that day. From April 2018 to September 2019, he was adjusting without issue. He acknowledged he committed the offenses, does not blame Mitchell, and suggested his untreated mental health problems caused his behavior. He argued that his lengthy incarcerations have negatively affected him. In addition to his experience of incarceration, his childhood was also full of traumatic incidences. In conclusion, he argued that he is not a danger to Mitchell or the community, and instead, he is a man that needs help. In allocution appellant apologized to Mitchell and reiterated his recollection of the incident.

Before pronouncing appellant's sentence, the trial court recognized that he had a traumatic childhood "marred by violence, by drinking and by a foster care system that failed [him]." The court acknowledged that appellant's prolonged incarceration—twenty-nine years—has "left him really without the proper skills to manage in personal relationships." Those issues, however, did not mitigate the multiple offenses committed against Mitchell. The court found that appellant lacked compassion and failed to apologize for his actions until his allocution. The court further found appellant's version of the events incredible. Finally, the court reflected upon Mitchell's victim impact statement in which she wrote: "if [appellant] can do this to [the victim], someone he claims to love more than life itself, what would he do to a stranger that crossed him." The court sentenced appellant to twenty years with five years suspended for malicious wounding, three years for use of a firearm, ten years, with five years suspended for abduction, five years for attempted strangulation, twelve months for assault and battery, twelve months for brandishing a firearm, and ten years for attempted murder. The court explained its departed from the guidelines noting "[d]efendant's 42

- 7 -

year history of violent crimes against women and other helpless victims merited an upward departure. Victim impact statement was compelling and her fear of his release and violence valid." This appeal follows.

ANALYSIS

I.

Appellant contends that the trial court abused its discretion by admitting a written appellate opinion regarding appellant's previous manslaughter conviction as well as direct testimony from a victim of a previously adjudicated crime. Appellant argues that this type of exhibit and direct testimony are not codified under Code § 19.2-295.1 and therefore were improperly admitted. Appellant further argues that this exhibit and testimony were improper rebuttal character evidence. Appellant argues that the psychological evaluation was not evidence of good character but rather was a medical assessment of the effects of his past incarceration. Consequently, the trial court improperly admitted character evidence from the Commonwealth, which was irrelevant, not probative, and highly prejudicial.

We review a court's decision to admit evidence at sentencing for an abuse of discretion. *Baldwin v. Commonwealth*, 69 Va. App. 75, 82 (2018). "Circuit court judges are vested with broad discretion in admitting evidence and can be expected to exercise that discretion to exclude evidence that does not aid the court in the sentencing phase." *Harvey v. Commonwealth*, 65 Va. App. 280, 286-87 (2015) (citation omitted). "Such weighing is left to the discretion of the trial court and will not be disturbed on appeal, absent an abuse of discretion." *Id.* at 287 (quoting *Teleguz v. Commonwealth*, 273 Va. 458, 482 (2007)). In determining the admissibility of evidence at a sentencing hearing, "the circumstances of the individual case will dictate what evidence will be necessary and relevant, and from what sources it may be drawn." *Beck v. Commonwealth*, 253 Va. 373, 384 (1997). "The scope of testimony in the sentencing phase is

- 8 -

wide, and the standard for exclusion of relevant evidence is whether the prejudicial effect substantially outweighs its probative value." *Prieto v. Commonwealth*, 283 Va. 149, 168 (2012); *see Teleguz*, 273 Va. at 482. "This is a matter of discretion for the circuit court and is properly reviewed under an abuse of discretion standard." *Id.*

> An abuse of discretion . . . can occur in three principal ways: when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.

*Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011) (embracing the Fourth Circuit's definition of abuse of discretion). At a sentencing hearing before the trial court, the application of evidentiary rules "is permissive, not mandatory in . . . [c]riminal proceedings other than [ ] trial, [ ] preliminary hearings, and [ ] sentencing proceedings before *a jury*." Va. R. Evid. 2:1101(c)(1) (emphasis added).

Code § 19.2-295.1 is entitled "Sentencing proceeding *by the jury* after conviction" and articulated the procedures to introduce evidence of previous convictions to the impaneled jury. (Emphasis added). Because appellant was sentenced by the trial court Code § 19.2-295.1 does not apply.

By admitting the 2006 Court of Appeals opinion, the trial court implicitly found that it was relevant to appellant's future dangerousness and was appropriate rebuttal character evidence. When the trial court admitted Dayton's testimony it held that it was relevant and that the court would "give it the appropriate weight that it needs." The court continued that it would allow the testimony "to the extent that [the Commonwealth] can bring out something that the Court doesn't have, that would be helpful." These rulings illustrate that the trial court considered the prejudicial nature of the 2006 Court of Appeals opinion and Dayton's testimony but ultimately found them to be relevant and more probative than prejudicial. Additionally, when sentencing

appellant, nothing in the record suggests that the trial court gave this Court's opinion or Dayton's testimony significant weight as the trial court did not reference either. "Circuit court judges are vested with broad discretion in admitting evidence and can be expected to exercise that discretion to exclude evidence that does not aid the court in the sentencing phase." *Harvey*, 65 Va. App. at 286-87 (citation omitted). Because the record demonstrates that the trial court appropriately weighed the evidence presented, the admission and consideration of this evidence were appropriate and not an abuse of discretion.

## II.

Appellant argues the trial court did not consider his mitigating evidence, in particular the psychological evaluation, when it fashioned a sentence and abused its discretion when it sentenced him above the guidelines. Appellant argues that the psychological evaluation which sought to rebut Mitchell's surprise that appellant was capable of the violence he displayed at the time of the offense was not properly considered by the court.

The record does not support appellant's claim that the trial court did not consider his mitigating evidence in fashioning a sentence. Before pronouncing sentence, the trial court acknowledged appellant had a traumatic childhood "marred by violence, by drinking and by a foster care system that failed [him]." The court noted that appellant's prolonged incarceration "left him really without the proper skills to manage in personal relationships," but the trial court opined that those issues did not mitigate the multiple offenses committed against Mitchell in her home by someone she trusted. Thus, the record reflects that the trial court considered all the evidence presented, both mitigating and aggravating, before it imposed the challenged sentences.

The standard sentencing guidelines, "are not binding on the trial judge; rather, the guidelines are merely a 'tool' to assist the judge in fixing an appropriate punishment." *Belcher v. Commonwealth*, 17 Va. App. 44, 45 (1993). "[W]hen a statute prescribes a maximum

imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Du*, 292 Va. at 565). Here, appellant's sentences were within the ranges set by the legislature. *See* Code §§ 18.2-10, 18.2-26, 18.2-32, 18.2-51, 18.2-53.1, 18.2-47, 18.2-51.6, 18.2-282, and 18.2-57.2. Additionally, the trial court explained in writing, as required by statute, why it departed from the guidelines.

To the extent that appellant argues that his sentence was disproportionate, this Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 653-54 (2011). We noted in *Cole* that the Supreme Court of the United States "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Id.* at 653 (quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (*per curiam*)). *Cf. Vasquez v. Commonwealth*, 291 Va. 232, 243 (2016) (rejecting Eighth Amendment challenge to 133-year active sentence because the sentence was imposed for "eighteen separate crimes"). Accordingly, we find no abuse of discretion with the trial court's sentencing decision.

CONCLUSION

For the foregoing reasons, we affirm the circuit court's sentence.

*Affirmed*.