COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, Lorish and Senior Judge Annunziata

MARK LEWIS JENKINS

v.     Record No. 1088-21-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
JUNE 28, 2022

FROM THE CIRCUIT COURT OF RAPPAHANNOCK COUNTY
James P. Fisher, Judge

(David W. Walls, Deputy Public Defender, on brief), for appellant.

(Jason S. Miyares, Attorney General; Justin B. Hill, Assistant
Attorney General, on brief), for appellee.


Appellant, Mark Lewis Jenkins, appeals from the decision of the Circuit Court of

Rappahannock County. Appellant contends that the trial court abused its discretion "in sentencing

[him] to a total of twenty years['] incarceration for the Breaking & Entering and larceny charges, in

addition to the balance on his probation violations." After examining the briefs and record in this

case, the panel unanimously holds that oral argument is unnecessary because "the appeal is wholly

without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). We affirm the decision of the trial court.

BACKGROUND

"The evidence is considered in the light most favorable to the Commonwealth, as the

prevailing party below." *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013). In 2005, the trial

court convicted appellant of two counts of unauthorized use of a vehicle and one count of credit

card theft. The trial court sentenced appellant to two years' incarceration on each of the

unauthorized use of a vehicle charges and three years' incarceration on the credit card theft charge.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The trial court suspended all but seven months and six days of the sentences. Subsequently, the trial court found appellant violated the terms and conditions of his probation, revoked his suspended sentences, and resuspended three years, four months, and twenty-four days of the sentences.

On July 9, 2020, L.F. and D.R. owned and resided in a home in Rappahannock County. That morning, they left for a medical appointment. Around 11:00 a.m., Joshua Keys arrived at the house of L.F. and D.R.'s neighbor to replace a broken thermostat. Soon after arriving, Keys heard a loud car pull in behind him and saw appellant get out of the car. While Keys was talking with the homeowner's son, appellant approached them and inquired about the owner of the neighbor's house. Keys recognized appellant because they attended school together.

L.F. and D.R. returned to their house around 4:00 p.m. and noticed that their kitchen window was broken. When they noticed that both of their computers were missing, L.F. immediately called the police. The police arrived, took pictures, and talked with L.F. and D.R. about the missing items. L.F. took inventory of all known missing items, including a $350 DVD player, a $2,500 MacBook Air, a $2,500 MacBook Pro, and cords and plugs for the computers. Additionally, L.F. found that they were missing approximately $1,000 in foreign currency, approximately $2,000 in American currency, a bag of foreign coins, and savings bonds valued at $9,000. Finally, L.F. noticed that they were missing a spare set of house keys and car keys, their passports, a wallet, $300 worth of "food items," a leather folder, and an antique cigar cutter.

During his investigation, Lieutenant Dodson of the Rappahannock County Sheriff's Office spoke with Keys, who provided details about his encounter with appellant. Dodson then located appellant's address in Culpeper County.

On the afternoon of July 12, 2020, L.F. noticed a car, containing a driver and a passenger, parked at an unusual spot on the road outside his house. That evening, L.F. saw the vehicle parked at the same spot on the road. L.F. called his neighbor to inquire about the vehicle. Shortly

thereafter, L.F. noticed D.R.'s Toyota was missing from the driveway. L.F. called the police and reported the missing vehicle.

Dodson contacted the Culpeper County Sheriff's Office and advised an officer to monitor appellant's address for signs of the missing Toyota. After the police located the missing Toyota at appellant's address, Dodson and Sergeant Berry executed a search warrant of the residence. Inside appellant's home, the police found L.F.'s and D.R.'s missing items, with the exception of the American currency.

The police arrested appellant and advised him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). After waiving his rights, appellant initially told Dodson that "a friend of his told him they had left some keys in a field, and that he was going to pick the vehicle up for that person and take it back to them." Later, appellant told Dodson that "there were some keys in a mailbox, and he was going to pick the vehicle up for somebody and drop it off to them." Appellant admitted that he was in Rappahannock County on July 9, 2020, to obtain "permission to go fishing at places he had went as a kid." He knocked on the victims' door, and when nobody answered, he knocked on a window, which he accidentally shattered. Appellant stated that he saw food on the table and entered through the window because "he really wanted the food." Once inside, appellant found "some other things" that he "grabbed." Appellant stated that he took the laptops to a friend to have a game installed on them. Initially, appellant denied taking any money, but later, when Dodson asked him about the cash, appellant said, "I still have some of it." Appellant denied taking the passports.

A grand jury charged appellant on two counts of grand larceny and one count of statutory burglary. Appellant pleaded guilty to the grand larceny of the Toyota but pleaded not guilty to the remaining charges. The trial court accepted appellant's guilty plea and found him guilty of that charge. After a bench trial, the trial court also found appellant guilty of the remaining grand larceny

and statutory burglary charges. Consequently, the trial court found that appellant violated the terms and conditions of his previously suspended sentences.

At the sentencing hearing, L.F. testified that he no longer "felt safe in [his] own home and in this county." He stated that he had to spend months "fortifying" his home, including replacing all the windows and doors on the first level. After appellant was arrested, L.F. felt safer; however, he was still concerned about appellant's accomplice in the larceny of the Toyota because the accomplice was never apprehended. Appellant testified that he was cooperative with authorities and provided information about his accomplice, including the accomplice's name and potential addresses.

The trial court reviewed programs completed by appellant while pending the resolution of the instant charges, as well as appellant's presentence investigation report.[1] The trial court also considered appellant's criminal history, which extended back to 2000. Finally, the trial court took notice of appellant's previous probation violations.

The Commonwealth argued that appellant's conduct "traumatized and scandalized" the victims and "robbed [them] of their state of feeling secure." The Commonwealth also raised appellant's multiple prior criminal offenses. The Commonwealth requested that the trial court sentence appellant in excess of fifteen years of incarceration. Appellant discussed his unstable upbringing, alcoholism, and his diagnosis of "emotionally disturbed." Appellant mentioned that his father died when he was five years old and that one of appellant's children died when she was

---

[1] During a break in the proceedings, while the attorney for the Commonwealth stepped out of the courtroom, the trial court asked appellant's counsel about a program appellant completed while incarcerated. The trial court noted a class on obtaining a recovery rebate credit. The trial court posed the following to appellant's counsel: "I'm just curious that our prisons are advising people—or our jails are advising people on how to get economic impact credits and payments?" The trial court mused "[i]sn't that a little ironic that people are signing up for payments from the government while they're waiting on sentencing on stealing people's property and breaking into their houses?"

eleven years old. In light of his cooperation with the police, appellant requested that the trial court reduce the low end of his sentencing guidelines to two years, eight months, and two days.[2] Appellant requested a sentence totaling between three and four years. Appellant agreed that revoking the balance of his suspended sentences would be appropriate. Appellant declined allocution.

The trial court considered appellant's lengthy and "very serious" criminal history, which included opportunities for rehabilitation that appellant "resoundingly failed." The trial court discussed how appellant's conduct affected the victims and their community. The trial court noted that while appellant was thirty-three years old, his criminal history was twenty years old. The trial court also discussed the personal value that the victims assigned to the stolen property. For instance, D.R. was writing a book, the manuscript for which was saved on one of the stolen laptops.[3] Given the "plethora of sentencing considerations" raised by appellant's case, the trial court found that the discretionary sentencing guidelines were inadequate. For the statutory burglary charge, the trial court sentenced appellant to twenty years' incarceration, with ten years suspended. For the two grand larceny charges, the trial court sentenced appellant to ten years' incarceration,

---

[2] The discretionary sentencing guidelines for appellant's larceny and burglary charges recommended a sentence totaling between five years and four months and nine years and five months, with a midpoint of six years and six months. The recommended range for the revocation of appellant's suspended sentences was between one year and three months and four years.

[3] In discussing the personal value D.R. assigned to one of the stolen laptops, the trial court stated the following:

> Not to mention the computers, the manuscripts—one man was writing a book. That's [a] very, very personal thing. It takes a lot of work and effort and to have that invaded and stolen—and I'm quite sure that you weren't interested in literature when you did it—but nonetheless it's a victimization that the [trial c]ourt has to take into account.

with five years suspended on each charge. Finally, the trial court revoked the balance of appellant's suspended sentences. This appeal followed.

ANALYSIS

Appellant argues that the trial court abused its discretion when it sentenced appellant to a total of twenty years' active incarceration for the statutory burglary charge and two grand larceny charges. Appellant argues that the trial court "looked at wholly improper factors and did not consider relevant factors that should have been given more weight." Appellant cites the trial court's comments regarding appellant taking a class on obtaining stimulus payments while incarcerated and its comment regarding appellant's "lack of interest in literature."

"The determination of sentencing lies within the sound discretion of the trial court. A sentencing decision will not be reversed unless the trial court abused its discretion." *Garibaldi v. Commonwealth*, 71 Va. App. 64, 67 (2019) (quoting *Martin v. Commonwealth*, 274 Va. 733, 735 (2007)). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). The sentencing guidelines "are discretionary, rather than mandatory." *Woodard v. Commonwealth*, 287 Va. 276, 281 (2014) (quoting *West v. Dir. of Dep't of Corr.*, 273 Va. 56, 65 (2007)). A judge's failure to follow the sentencing guidelines "shall not be reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F).

It was within the trial court's purview to weigh the mitigating evidence appellant presented. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and

seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

Here the record demonstrates that the trial court heard the mitigating evidence appellant cites on appeal, including appellant's "difficult upbringing," "personal tragedies," and his "diagnoses." Balanced against that, however, was the impact of appellant's crimes on the victims and their community, and the sense of security they lost. Appellant's extensive criminal history also affected the trial court's sentencing. At the time of the sentencing, appellant was thirty-three years old and had a criminal history stretching back twenty years. The trial court noted that other circuit courts granted appellant the opportunity to rehabilitate on several occasions, but that appellant "resoundingly failed" to take advantage of these opportunities to reform. After considering all the circumstances, the trial court imposed the sentences that it deemed appropriate.

Appellant asserts that the trial court considered "wholly improper factors" in determining appellant's sentences. The trial court commented on appellant's interest in obtaining a stimulus payment during a break in the proceedings. The trial court did not raise those comments at any point in its discussion of appellant's sentences. With respect to the trial court's comments about appellant's interest in literature, the trial court noted that appellant stole a computer containing a book that one of the victims was writing. The trial court's expressed doubt that appellant stole the computer because of the book was consistent with the absence of any evidence to the contrary. Its comment that writing a book took "a lot of work and effort" and was a "very, very personal thing," reflected the trial court's proper consideration of the offense's impact on the victim.

Moreover, appellant's sentences were within the ranges set by the legislature. *See* Code §§ 18.2-91 and -95. "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

- 7 -

## CONCLUSION

For the foregoing reasons, the trial court's decision is affirmed.

*Affirmed.*