UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Friedman and Callins

DARRIN LAMONT CRAWLEY

MEMORANDUM OPINION*

v.      Record No. 1307-21-2          PER CURIAM
                                      NOVEMBER 9, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HALIFAX COUNTY
Kimberley S. White, Judge[1]

(John A. Terry; Bagwell & Bagwell, PC, on brief), for appellant.

(Jason S. Miyares, Attorney General; Rebecca M. Garcia, Assistant
Attorney General, on brief), for appellee.


Darrin Lamont Crawley pleaded guilty to second-degree murder, use of a firearm in the

commission of a felony, and possession of a firearm by a non-violent felon.[2]  On appeal, Crawley

argues that the trial court abused its discretion by imposing a total active sentence of twenty-five

years' incarceration because it sentenced him to the maximum extent of the sentencing cap and

ignored the finding that he accepted responsibility and the evidence of mitigation.  After examining

the briefs and record, the panel unanimously holds that oral argument is unnecessary because "the

appeal is wholly without merit."  Code § 17.1-403(ii)(a); Rule 5A:27(a).  We affirm the trial court's

judgment.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Honorable Kimberley S. White entered the final order in this case.  Now a member of this Court, Judge White took no part in this decision.

[2] The parties stipulated that the Circuit Court of the City of Danville had convicted Crawley of felony shoplifting in 2011.

BACKGROUND

"The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013).

Following Crawley's guilty pleas, the Commonwealth proffered the following evidence to the trial court. On March 29, 2020, Crawley attended a party at a residence in Halifax County. An altercation arose at the residence. In response, Crawley retrieved his wife's handgun from a vehicle and fired "warning shots" into the air. Later, surrounded by many other people, Crawley confronted another party attendant, Travis L. Hughes. Crawley drew the handgun and shot Hughes "at very close range." Hughes fell to the ground, and Crawley advanced toward him and continued to shoot him. In total, Crawley shot Hughes five times in the back or the side. Crawley and others took Hughes to the hospital. On the way, Crawley disposed of the firearm, which was never recovered. Hughes was pronounced dead in the hospital emergency room.

The police interviewed Crawley, who stated that he was attempting to talk to Hughes and "get [him] out of a confrontation." Crawley told the police that Hughes then "just started swinging on him" and Crawley shot Hughes without looking. Crawley claimed that "he didn't mean it."

Crawley told the police that he would take them to "where he believed the firearm had been hidden." He took them to the residence, but the firearm was not there. In the presence of the police, Crawley obtained another firearm and attempted to commit suicide.

Crawley added to the Commonwealth's proffer that there was "heavy intoxication" at the party. Crawley stated that he and another person took Hughes to the hospital, but the hospital did not allow them to stay because of COVID-19 restrictions. Crawley provided that he and Hughes were friends, that he was "really broken up by this," and that he "want[ed] to take responsibility." Crawley added that he was crying during the one-hour-long confession he gave to the police.

Crawley entered into a written plea agreement in which he pleaded guilty to second-degree murder, use of a firearm in the commission of a felony, and possession of a firearm by a convicted felon. Crawley signed the plea agreement, which stated that "I do freely and voluntarily plead guilty" to the charges. The plea agreement provided that Crawley "will plead guilty as charged and will be sentenced to an active term of incarceration of no greater than 25 years." The plea agreement also stated that "I understand that by pleading guilty I may be waiving my right to an appeal," and that "I will not ask, nor have my attorney ask, for the court to reconsider my sentence, regardless of the court's jurisdiction, now or in the future, to do the same."

During Crawley's plea colloquy before the trial court, he acknowledged that he was entering his guilty plea freely and voluntarily, that he understood the maximum punishment he could receive under the plea agreement, and that he understood "by pleading guilty [he] may waive any right to appeal the decision of [the trial court]." Crawley also acknowledged that he had read the plea agreement and that his counsel had explained the plea agreement to him. When asked by the trial court if there was "anything remaining that you don't understand about the plea agreement," Crawley confirmed that he understood everything. The Commonwealth informed the trial court that Crawley knew that the Commonwealth would be asking the court to impose a twenty-five-year active sentence. The trial court accepted the plea agreement and convicted Crawley of all charges.

At the sentencing hearing, Crawley testified that he and Hughes were "the best of friends . . . like, brothers." Crawley stated that Hughes' death "crushed" him. Crawley admitted that when he took the police to the residence to find the handgun, it was to allow himself to commit suicide. Crawley also offered evidence about his participation at church, his relationship with his five children, and how his pre-trial incarceration impacted them.

The Commonwealth requested the maximum active sentence under the plea agreement of twenty-five years' incarceration. Crawley suggested that an appropriate active sentence would be

ten years. The trial court sentenced Crawley to a total of forty-five years' incarceration, with twenty years suspended. This appeal followed.

ANALYSIS

Crawley contends that the trial court abused its discretion by sentencing him to the maximum active sentence of twenty-five years under the plea agreement because the court did not consider or refer to the mitigating evidence that he offered and did not consider his acceptance of responsibility. On appeal, he "asks that this Court reverse the sentencing order, and remand to the trial court for a new sentencing hearing." We conclude that, under his written plea agreement, Crawley waived his right to make this argument on appeal.

"The issue of whether a defendant has waived his right of appeal in connection with a plea proceeding 'is a matter of law' . . . subject to *de novo* review on appeal." *Delp v. Commonwealth*, 72 Va. App. 227, 235 (2020) (alteration omitted) (quoting *United States v. Manigan*, 592 F.3d 621, 626 (4th Cir. 2010)). "Virginia has long held a criminal defendant can waive 'his appeal of right' if the circumstances demonstrate 'his decision to waive his appeal was made knowingly, voluntarily, and intelligently.'" *Congdon v. Commonwealth*, 57 Va. App. 692, 699 (2011) (quoting *Davidson v. Commonwealth*, 244 Va. 129, 132 (1992)). "Once accepted, courts generally treat plea agreements as binding contracts." *Griffin v. Commonwealth*, 65 Va. App. 714, 718 (2016). Thus, "basic rules of contract law apply to plea agreements." *Id.* (alteration omitted) (quoting *Wright v. Commonwealth*, 49 Va. App. 58, 62 (2006)).

Under his written plea agreement and during his plea colloquy, Crawley acknowledged that by pleading guilty he may be waiving his right to an appeal, and he confirmed that he had entered into his guilty plea knowingly, voluntarily, and intelligently. Here, the terms of Crawley's plea agreement specifically provided that he "will not ask, nor have my attorney ask, for the [trial] court to reconsider my sentence, regardless of the court's jurisdiction, now or in the future, to do the

- 4 -

same." But now Crawley requests that this Court reverse the trial court's sentence and remand to the trial court for a new sentencing hearing—a form of relief that his plea agreement prohibits him from pursuing. We conclude that, by agreeing not to ask the trial court to reconsider his sentence, Crawley waived his right to raise the issue he now raises on appeal that, if decided in his favor, would put him in violation of the terms of his plea agreement.[3] Thus, we do not reach the merits of Crawley's argument.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[3] In addition, we note that Crawley *explicitly agreed* to be sentenced "to an active term of incarceration of no greater than 25 years." The trial court sentenced Crawley consistent with the express terms of his plea agreement when it sentenced him to serve an active sentence of twenty-five years of incarceration. Furthermore, the trial court's sentence did not exceed the maximum sentence set by the General Assembly for Crawley's crimes and, therefore, is not an abuse of discretion. *See Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) ("Consequently, 'when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the [trial court's] sentence will not be overturned as being an abuse of discretion.'" (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007))).