COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Huff, Lorish and Senior Judge Petty


WINFRED DEWAYNE MULLINS, SR.

                                      MEMORANDUM OPINION[*]

v.     Record No. 1365-22-3                    PER CURIAM
                                           APRIL 25, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
C. Randall Lowe, Judge

(L. Dudley Senter; The Senter Law Firm, P.C., on brief), for
appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Susan Hallie Hovey-Murray,
Assistant Attorney General, on brief), for appellee.


After pleading guilty to incest, rape, and aggravated sexual battery by a parent, the trial

court sentenced Winfred Dewayne Mullins, Sr. to life imprisonment, plus 40 years, with all but

40 years suspended. Mullins contends that the trial court abused its sentencing discretion by not

properly weighing mitigating evidence. We have reviewed the parties' pleadings, fully examined

the proceedings, and determined the case to be wholly without merit as set forth below and we

unanimously hold that oral argument is unnecessary. Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Mullins pleaded guilty to incest with a child between the ages of 13 and 17; rape by force, threat, or intimidation; and aggravated sexual battery by a parent.[2] As part of his plea colloquy with the court, Mullins confirmed that he had read, understood, truthfully answered, and signed the "Guilty Plea Questionnaire," which was proffered to the court. Mullins acknowledged that there was no agreement regarding his sentence and that the maximum punishment for his charges was life plus 40 years' imprisonment. He also understood that the trial court was not bound by the sentencing guidelines, which might change after the probation officer conducted a pre-sentence investigation. Mullins affirmed that he discussed the decision with his counsel and entered the pleas freely and voluntarily.

Mullins stipulated that "if he elected to go to trial, that the Commonwealth would have sufficient evidence to prove guilt beyond a reasonable doubt on the three offenses charged." The Commonwealth proffered that in October and/or November 2005 Mullins raped his biological daughter, W.J., "by forcing her to have sexual intercourse against her will." W.J. was 14 years old when Mullins raped her. W.J. became pregnant, and subsequent DNA analysis established Mullins's paternity of W.J.'s son. W.J. later told police that Mullins "threaten[ed] to kill her or punish her if she ever told anyone." "During an interview with law enforcement the defendant acknowledged the victim as his biological daughter and acknowledged that he had had sexual intercourse with her during the time period."[3]

---

[2] The trial court granted the Commonwealth's motion to nolle prosequi five additional charges involving the same victim.

[3] The record does not disclose when W.J. reported the abuse, but the felony warrants for Mullins's arrest were issued in November 2021.

The trial court found Mullins's pleas were entered "freely, voluntarily, and intelligently with an understanding of the nature of the charges and the consequences of the pleas." Based on the proffer and stipulations, the trial court convicted Mullins of incest, rape, and aggravated sexual battery and ordered a pre-sentence investigation report.

At the sentencing hearing, Mullins's daughter, Victoria Mullins, testified on his behalf. Victoria stated that W.J. was her older half-sister. She attested that she lived with Mullins for nearly her entire life, they "did everything together," and he had never behaved inappropriately with her. Victoria also never witnessed Mullins behave inappropriately with anyone else. She confirmed that she had never witnessed her father abuse alcohol or drugs, or view pornography. Victoria learned that the person she thought of as her nephew actually was her brother only the preceding year. Mullins had never discussed the crimes with her and did not apologize until he was arrested. She contended that Mullins was "not a danger to society" but a good provider and that his children and grandchildren loved him.

Julie Ann, Mullins's wife of 27 years and mother of three of Mullins's children, also never witnessed Mullins abusing alcohol or drugs or viewing pornography. Julie stated that Mullins never presented any concerning behaviors and that he was a good provider who loved his family. To her knowledge, Mullins had never threatened anyone. She was unaware of the rape until July 2021. When the allegations surfaced, however, Mullins did not deny W.J.'s account. Neither Mullins nor W.J. had told Julie who had fathered the child she regarded as her grandson. If she had known about the abuse when it occurred, she "probably" would not have remained married to Mullins.

When asked if she was "standing beside" Mullins, Julie stated that she was there "for the truth." Julie did not know if Mullins had ever expressed remorse for his actions; she understood that he had apologized to W.J. She affirmed W.J.'s son, A.M., had severe "mental health and

behavioral problems." Julie had "no idea" that the abuse was occurring at the time. She expressed that Mullins's friends, family members, and colleagues had written letters attesting to his character.

The Commonwealth argued that Mullins should be sentenced to life for the rape, plus 40 years for incest and aggravated sexual battery. The Commonwealth noted that W.J.'s victim impact statement recounted that she did not get to experience life as a "normal child." W.J. stated that there was no escape from the abuse she had suffered. The Commonwealth noted that Mullins had served a prison sentence for physical abuse and neglect of W.J. when she was a young child, so "child abuse and neglect . . . [wa]s a significant piece" of Mullins's criminal history. Mullins's behavior was "strategic and manipulative," and he had successfully concealed his offenses for a significant time. The Commonwealth acknowledged that Mullins admitted to the crimes and had not committed any recent offenses but noted that he had caused his daughter substantial trauma and minimized his conduct. The Commonwealth argued that Mullins was not entitled to any sentence reduction because he expressed no remorse until the police arrested him 16 years after he committed the offenses, that his assistance was unnecessary because DNA testing proved paternity, and that Mullins should be sentenced to life in prison.

Mullins acknowledged that he used his authority as W.J.'s father to sexually assault her but claimed he had expressed remorse and apologized. He noted that he pled guilty, knowing the possibility of receiving a life sentence, and was willing to serve time for the crimes he committed. Mullins submitted several letters to the trial court attesting to his good character. In addition, Mullins asked the trial court to consider an adjustment to the sentencing guidelines for acceptance of responsibility, substantial assistance to the Commonwealth (by not contesting the charges), and his expression of remorse. Mullins asserted that based on his letters of support and his acceptance of responsibility, he met the pre-sentencing report mitigation standards and

should be sentenced to the adjusted low end of the guidelines.[4]  In allocution, Mullins accepted responsibility for his crimes and apologized for the pain he had caused W.J., A.M., and the rest of his family.  He hoped that W.J. would forgive him, asserted that he was not a danger to society, and pleaded for mercy.

Finding Mullins's actions "heinous" and that he did not accept responsibility for destroying his daughter's life until the police came to his door, the trial court sentenced Mullins to life plus 40 years' imprisonment; it suspended all but 40 years.  In addition, the trial court issued a lifetime protective order in W.J.'s favor.  Mullins appeals.

ANALYSIS

Mullins contends that the trial court abused its discretion in imposing an active sentence of 40 years' imprisonment.  He notes that "[t]he sentencing guidelines called for a sentence range of only eight years to seventeen years and two months, with a midpoint of fourteen years and four months."  Mullins further asserts that there were mitigating circumstances that warranted leniency, including his asserted acceptance of responsibility.

"We review the trial court's sentence for abuse of discretion."  *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011).  It is well-established that "[i]f a sentence imposed is within the statutory limits fixed by the legislature, the assumption is that the sentence will not be disturbed on appeal."  *Bassett v. Commonwealth*, 13 Va. App. 580, 582 (1992).  This is the extent of our substantive sentencing review "[a]bsent an alleged statutory or constitutional violation."  *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016).  Mullins argues that the sentence was

---

[4] The discretionary sentencing guidelines reflected a range from 8 years of incarceration to 17 years and 2 months, with a midpoint of 14 years, 4 months.  The adjusted low end, if the trial court found substantial assistance, acceptance of responsibility, or an expression of remorse, was four years.

procedurally unreasonable because it exceeds the guidelines recommendation and because the trial court failed to adequately weigh mitigating circumstances. We disagree.

"The sentencing guidelines are advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). "[T]he recommended sentencing ranges contained in these discretionary guidelines are not binding on the trial judge but, rather, are mere tools to be used by the judge in fixing an appropriate sentence within the limitations established by the statute governing punishment for the particular crime." *Luttrell v. Commonwealth*, 42 Va. App. 461, 465 (2004). A judge's failure to follow the sentencing guidelines "shall not be reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F). Accordingly, the trial court did not err merely by imposing a sentence in excess of the range recommended by the guidelines. *See Smith v. Commonwealth*, 26 Va. App. 620, 626 (1998); *Valentine v. Commonwealth*, 18 Va. App. 334, 339 (1994).

Furthermore, it was within the trial court's purview to weigh any mitigating factors Mullins presented, including the letters from the community and his willingness to account for his crimes. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). The record demonstrates that the trial court found it difficult to reconcile the accounts given in the proffered letters with the heinous nature of Mullins's crimes. The trial court also rejected Mullins's claim that he had accepted responsibility because he did not "take responsibility until 17 years later when the police show[ed] up and knock[ed] on [his] door." That belated acknowledgment was not accepting responsibility, in the court's view, "[t]hat's getting caught and finally having to admit what you've done." "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking

into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* Having reviewed the record, including W.J.'s victim impact statement, we find no abuse of discretion with the trial court's sentencing decision.

CONCLUSION

Accordingly, we affirm the trial court's judgment.

*Affirmed.*