COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Causey and Friedman

KENNETH KA'VON GRANT

v.      Record No. 0515-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
FEBRUARY 28, 2023

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

(Carie Hatley Schenk, Assistant Public Defender, on briefs), for
appellant.

(Jason S. Miyares, Attorney General; David A. Mick, Assistant
Attorney General, on brief), for appellee.


Appellant Kenneth Ka'Von Grant challenges his active sentence of twenty years'

incarceration upon his convictions for involuntary manslaughter, driving on a revoked license while

endangering the life or limb of another, and driving under the influence, third conviction within ten

years. Grant contends that the Circuit Court of the City of Virginia Beach ("trial court") erred by

failing to consider the "recommended sentencing guidelines" and not "giv[ing] appropriate weight"

to his mitigating evidence, including his mental illness and acceptance of responsibility. After

examining the briefs and record in this case, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

We therefore affirm the trial court's judgment.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, we discard any of Grant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

Grant pleaded guilty to involuntary manslaughter, driving on a revoked license, and driving under the influence, third conviction within ten years. Before accepting Grant's guilty pleas, the trial court conducted a colloquy with him to ensure that he understood their implications. During his colloquy with the trial court, Grant indicated he understood that he faced a maximum potential sentence of twenty years in prison, twelve months and ninety days' incarceration in jail, along with a $7,500 fine. Grant assured the trial court that he had decided for himself to plead guilty and no one had made any threats or promises to induce his pleas. He was satisfied with his attorneys. Grant confirmed that there was no plea agreement with the Commonwealth, and he declined the opportunity to ask the trial court questions regarding his pleas. The trial court accepted Grant's pleas, finding that they were "knowingly, freely, and voluntarily made."

Grant entered a stipulation of facts with the Commonwealth, which he agreed "fairly summarize[d]" the evidence the Commonwealth would have presented had the case gone to trial. The stipulation established that around 8:00 p.m. on October 9, 2020, the victim, Lyree Dawn Vaughn, was driving her red Honda alone eastbound on Holland Road. At the same time, Grant was driving westbound on Holland Road. As he approached the intersection with Governors Way, Vaughn moved into the left turn lane. When Vaughn attempted to turn left at the green light, Grant's Dodge Durango struck her car on the passenger's side. Grant's truck pushed

Vaughn's car approximately 100 feet until it struck a curb, then rotated counterclockwise and came to a stop "in the number two lane" approximately 27 feet from the curb. Grant's truck traveled on the "grassy" shoulder, stopping approximately 143 feet from where the impact occurred. Vaughn died at the scene of the accident. The medical examiner later determined that Vaughn died of blunt force head trauma from the crash.

The crash data retrieved from Vaughn's airbag control module recorded her speed at six miles per hour ("mph") at impact. Although no crash data could be retrieved from Grant's truck, "time distance calculations" made using video footage from nearby cameras estimated that Grant was driving somewhere between 81 and 84 mph before he started to brake, and 61 mph after braking. Grant left the scene of the accident on foot, but he later returned, and Officer Daley detained him. Witnesses identified Grant as the driver of the Durango, and Grant told Officer Daley that he was the driver. Grant stated that he left the scene of the accident and walked to a gas station to purchase cigars. Grant refused medical treatment.

Officer Daley noticed that Grant smelled strongly of alcohol and that he had bloodshot, watery, and glassy eyes. Grant's speech was slurred, and he struggled to stand with his feet together. Grant showed signs of impairment during two field sobriety tests and declined two others. He denied consuming alcohol after the crash occurred. Officer Daley offered Grant a preliminary breath test and arrested Grant.

Following his arrest, Grant complained of having respiratory issues and was transported to the hospital. At the hospital, Grant consented to have his blood drawn under the implied consent statute. The toxicologist determined that Grant's blood alcohol content was .189 gram per 210 liters of breath two hours after the crash. Grant had two prior convictions for driving under the influence; his 2019 conviction resulted in revocation of his driving privileges.

Based on Grant's pleas and the stipulated facts, the trial court convicted Grant of the charges. The trial court ordered a presentence report and ordered that Grant be evaluated for the Behavioral Correction Program ("BCP").

At the sentencing hearing, the Commonwealth submitted victim impact statements. In addition, Vaughn's family and friends described Vaughn as a joyful, loving, and caring woman, who had been the matriarch of her family. She was the "glue" that held them together. A single mother of two sons, one of whom was born with cerebral palsy, Vaughn loved her sons above all else; they were the center of her world. Vaughn was a "phenomenal" woman who had raised her siblings and inspired them all. Her friends and family described their anguish and unbearable pain caused by her death. Although the family saw Grant as "irresponsible and careless" for the choices he had made, they bore him no ill will, they explained, because "That's how [Vaughn] raised us."

Grant's counsel reminded the trial court that Grant initially was found incompetent to stand trial and the facility that had restored him to competency had diagnosed him with "unspecified schizophrenia spectrum and other psychotic disorders." She acknowledged that Grant could not undo what had occurred but noted that he had cooperated with the police, waived a preliminary hearing, and entered guilty pleas without a plea agreement. Grant was remorseful. Counsel asked the trial court to impose a sentence within the sentencing guidelines[1] or, in the alternative, sentence Grant to the BCP[2] which would help him learn coping skills, "learn how to live with his previously undiagnosed mental health issues," and overcome his

---

[1] The discretionary sentencing guidelines recommended a sentence between one year and six months' incarceration to three years and ten months' incarceration, with a midpoint of two years and eight months' incarceration.

[2] Grant acknowledged that his participation in the BCP would require the trial court to impose a sentence above the sentencing guidelines recommendation.

substance abuse so he could return to society. She noted that the sentencing guidelines recommendation accounted for Grant's criminal history and the seriousness of his current convictions. Noting his relative youth, lack of prior felony convictions, his loss of "support" and "connection [with] most of his family members because of this incident," and his mental health diagnosis, counsel reiterated her request that Grant be admitted to the BCP or for a sentence within the recommended guidelines range.

The Commonwealth asked the trial court to impose a twenty-year sentence, with three years' post-release supervision. The Commonwealth argued that the sentencing guidelines did not account for the "aggravating factors" or the "earth-shattering" loss Vaughn's family had endured. The Commonwealth stressed Grant's excessive speed and his blood alcohol content of over .18 two hours after the collision occurred. In the Commonwealth's view, Grant had received a benefit when the Commonwealth asked the trial court to grant a motion to nolle prosequi a hit and run charge in exchange for Grant's guilty pleas.[3] The Commonwealth argued that Grant was a "repeat drunk driver" who killed Vaughn and his "egregious" behavior "require[d] a sentence that deviate[d] from the guidelines."

In allocution, Grant apologized for his actions. After taking a recess to "reflect[]" on the evidence before it, the trial court sentenced Grant to a total of twenty years' imprisonment and indefinitely revoked his driver's license. Acknowledging that the sentence would not change the loss Vaughn's family had endured, the trial court found that the sentence it imposed was "the best [it] could [do]" considering all the evidence. This appeal follows.

ANALYSIS

Grant argues that the active sentence the trial court imposed represents an abuse of its sentencing discretion because it "failed to consider the recommended sentencing guidelines" and

---

[3] Grant argued that the charge was "nol-pros[sed]" because of insufficient evidence.

"failed to give appropriate weight" to his mitigating evidence, including his mental illness, acceptance of responsibility, and remorse. He claims that the record contains "no indication that" the trial court considered "the specific mitigating factors" he presented. We disagree with Grant's characterization of the record.

"The sentencing guidelines are advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). The guidelines "provide only flexible guideposts for the trial judge to consider in determining the appropriate sentence within the range of punishment defined by the legislature." *Luttrell v. Commonwealth*, 42 Va. App. 461, 467 (2004). "Although the trial judge must provide a written explanation for departure from the guidelines, *see* Code § 19.2-298.01(B), the judge is not bound by a presumptive range and need not justify the decision" to depart from the guidelines range. *Luttrell*, 42 Va. App. at 467. Moreover, a judge's failure to follow the sentencing guidelines is not "reviewable on appeal or the basis of any other post-conviction relief." Code § 19.2-298.01(F). Instead, "[w]e review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011).

It is well-established that when "a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565). Here, Grant's sentences were within the ranges set by the legislature. Code §§ 18.2-10, 18.2-36.1, 18.2-266, 18.2-270, and 46.2-391.

It was "within the trial court's purview to weigh" the mitigating evidence Grant presented, including his mental illness, acceptance of responsibility, and remorse. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.*

The record does not support Grant's contention that the trial court did not consider his mitigating evidence; rather, it demonstrates that the trial court took a recess to "reflect[]" on the evidence before it, including Grant's mental illness, acceptance of responsibility, and remorse. Balanced against Grant's mitigating evidence, however, were significant aggravating facts. Most significant were his prior convictions for driving under the influence and the "horrible" circumstances of Vaughn's violent and untimely death. In fact, the trial court explained its departure from the sentencing guidelines, writing: "Horrible Facts[;] Very Aggravated." We reject Grant's implied argument that the trial court was required to explain the weight it gave to each piece of mitigating and aggravating evidence, because "[a]bsent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'" *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015) (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)). After considering all the evidence, the trial court imposed the sentence that it deemed appropriate. That sentence "does not exceed [the statutory] maximum," which ends this Court's review. *Minh Duy Du*, 292 Va. at 564; *see also Thomason*, 69 Va. App. at 99 ("Appellant's sentence was within the statutory range, and our task is complete.").

## CONCLUSION

Finding no abuse of the trial court's broad sentencing discretion, we affirm the judgment.

*Affirmed.*