COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Fulton, Friedman and Raphael
Argued at Lexington, Virginia


DEBORAH ANNE COLEMAN

MEMORANDUM OPINION[*]
v.      Record No. 1005-22-3        PER CURIAM
MAY 30, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALLEGHANY COUNTY
Edward K. Stein, Judge

(James V. Doss, III, on brief), for appellant.

(Jason S. Miyares, Attorney General; John Beamer, Assistant
Attorney General, on brief), for appellee.


Following her guilty plea, the trial court convicted Deborah Anne Coleman of felony

homicide. The trial court sentenced Coleman to 30 years' imprisonment with 12 years suspended,

leaving an active sentence of 18 years' imprisonment. On appeal, Coleman argues that the trial

court abused its sentencing discretion. After examining the briefs and record in this case, the panel

unanimously holds that oral argument is unnecessary because "the dispositive" issue in this appeal

has been "authoritatively decided, and the appellant has not argued that the case law should be

overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b); Rule 5A:27(b).

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413.

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Under a written plea agreement, Coleman agreed to plead guilty to felony homicide; the plea agreement also capped the active sentence that the trial court could impose at 20 years' incarceration.[1] Before accepting Coleman's plea, the trial court conducted a colloquy with her to ensure she was entering her plea freely and voluntarily. During the colloquy, Coleman confirmed that she understood the maximum punishment for the offense, the plea agreement provided for an active sentence not to exceed 20 years, and the trial court was not required to follow the sentencing guidelines. Coleman acknowledged that she had read and understood the plea agreement before signing it.

The parties stipulated that the Commonwealth's evidence would show that on February 9, 2021, Coleman had an argument with her fiancé, Shannon Anthony Clark, about financial issues and his involvement with another woman, Miranda Shannon. Coleman went to a friend's home, and when she returned the next day, Clark and Shannon were at the house. When Shannon left, Clark was "fine," but when he later fell asleep, his breathing became "irregular." Coleman feared that Clark had overdosed but, instead of calling 911, she injected him with "two pre-prepared shots" of "ice" hoping to revive him.[2]

---

[1] In exchange for Coleman's guilty plea, the Commonwealth agreed to nolle prosequi Coleman's other pending charges: willfully or negligently causing the life of a child, for whom she had custody, to be endangered or the health of the child to be injured, possession with intent to distribute a Schedule III drug, possession with intent to distribute at least 10 grams but less than 100 grams of methamphetamine, 4 counts of possession with intent to distribute a Schedule I/II drug, and possession of drug paraphernalia.

[2] "Ice" is a slang term for methamphetamine.

Coleman also texted her friend and admitted that she had used drugs earlier that day and was on "murderous fucking edge." Coleman stated that she had given Clark a "HUFE [sic] fucking shot of ice" that should have "rocked his fucking world." Coleman also administered Narcan to Clark and subsequently contacted Shannon to bring more Narcan. When Shannon arrived at the house, Clark was "blue and unresponsive." She and Coleman administered more Narcan, and Shannon called 911 while Coleman commenced CPR. Emergency services arrived and attempted to resuscitate Clark, but their efforts were unsuccessful. The medical examiner determined that Clark died of "acute fentanyl and methamphetamine toxicity."

The trial court accepted Coleman's plea, finding that it was made freely and voluntarily and that she understood the nature and consequences of pleading guilty. Based on her plea and the proffered evidence, the trial court convicted Coleman of felony homicide. Consistent with the terms of the written plea agreement, the trial court granted the Commonwealth's motion to nolle prosequi the remaining charges.

At the sentencing hearing, the Commonwealth presented evidence from Clark's mother and children about the impact his death had on them. They testified that Clark was a special education teacher and a basketball coach. Clark's mother testified that he had been using methamphetamine for approximately three or four years.

Coleman presented evidence about her drug addiction and how it affected her. Coleman testified about her childhood, her education, her employment as a psychologist, and her drug addiction. She testified that "in the last ten or fifteen years" she had difficulty "keeping a job" because of her "drug problem." Coleman admitted that she had used marijuana, cocaine, opiates, benzodiazepines, PCP, MDMA, methamphetamine, Xanax, Adderall, Lortab, Oxycontin, Suboxone, heroin and fentanyl. She acknowledged that she and Clark used illegal drugs together "every day." Coleman also presented evidence from people who had used drugs with her and Clark

and testified that overdoses were "[v]ery common" in their house. Coleman had experienced five overdoses in 2020; Clark had administered Narcan to her each time.

In addition to her substance abuse, Coleman had been diagnosed with "generalized anxiety disorder, panic disorder, ADHD[,] major depressive disorder and post-traumatic stress disorder." Coleman had sought mental health and substance abuse treatment. While in jail, she applied for rehabilitative services and was accepted into "The Sparrow's Nest," a 12-month program in Beckley, West Virginia. The Community Services Board also evaluated Coleman and recommended that she receive inpatient treatment, followed by intensive outpatient services. Coleman wanted to get treatment.

Coleman accepted responsibility for Clark's death; she admitted that she never called for emergency services, even though she recognized that he was "having trouble" and her efforts were not helping. Coleman realized after reviewing the autopsy report that the methamphetamine that she injected into Clark caused his death.

At the conclusion of all the evidence, the Commonwealth argued that Coleman never called 911 although she "realized that things seemed off" with Clark when he had trouble breathing. Instead, she gave him a "huge shot" of methamphetamine. When that did not work, Coleman gave him another shot of methamphetamine. Once Shannon arrived at the house and saw Clark, she— not Coleman—called 911. The Commonwealth also stressed the devastating impact of Clark's death on his family. The Commonwealth argued for a 40-year sentence with 20 years suspended, leaving Coleman with a 20-year active sentence, which was consistent with the sentencing cap from the plea agreement.[3]

---

[3] The discretionary sentencing guidelines recommended an active sentence between 12 years and 11 months and 21 years and 7 months, with a midpoint of 17 years and 3 months. The guidelines also included a modified recommendation based on Coleman's "[s]ubstantial [a]ssistance, [a]cceptance of [r]esponsibility or [e]xpression of [r]emorse" that reflected an adjusted range between 6 years, 5 months, and 15 days and 21 years and 7 months.

- 4 -

Coleman argued that she "accidentally and contrary to the intention of the parties" killed Clark. She emphasized her acceptance of responsibility for her actions and acknowledged the "pain and agony" she had caused Clark's family. Coleman also stressed that she lost "everything," including her career and "the love of her life," because of her drug addiction. Coleman highlighted her limited criminal record. She asked the trial court to allow her to participate in "The Sparrow's Nest" program for 12 months, "reconsidering further sentence at that time."

After considering the evidence and argument by counsel, the trial court sentenced Coleman to 30 years' imprisonment with 12 years suspended. Coleman appeals the sentence the trial court imposed.

## ANALYSIS

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011); *see also Fazli v. Commonwealth*, 71 Va. App. 239, 248 (2019) (same). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

Coleman argues that the trial court abused its discretion by sentencing her to 18 years' active incarceration and not considering her mitigating evidence. She contends that the trial court "offered no opinion, no explanation and no finding as to any of the evidence" that she presented at the sentencing hearing.

Coleman's sentence was within the terms of the written plea agreement and the sentencing range set by the legislature. *See* Code § 18.2-33. Additionally, it was within the trial

court's purview to weigh Coleman's mitigating evidence, including her addiction. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* The record demonstrates that the trial court heard the mitigating evidence Coleman cites on appeal, including her acceptance of responsibility. Balanced against those circumstances, however, was the seriousness of the crime. After considering all the circumstances, the trial court imposed the sentence that it deemed appropriate. It was not required to explain its sentence or the weight it assigned to the aggravating and mitigating circumstances. *See Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015) ("Absent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'" (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982))); *see also Cannaday v. Commonwealth*, 75 Va. App. 707, 719 (2022) (same). Coleman's sentence was "within the statutory range, and our task is complete." *Thomason*, 69 Va. App. at 99.

To the extent that Coleman argues that her sentence is disproportionate, this Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 654 (2011). We noted in *Cole* that the Supreme Court of the United States "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Id.* at 653 (quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (per curiam)); *cf. Vasquez v. Commonwealth*, 291 Va. 232, 243 (2016) (rejecting an Eighth Amendment challenge to a 133-year active sentence because the sentence was imposed for "eighteen separate crimes"). Moreover, Coleman agreed to the sentence cap,

which the trial court honored, when she entered the plea agreement. "The defendant, having agreed upon the action taken by the trial court, should not be allowed to assume an inconsistent position." *Clark v. Commonwealth*, 220 Va. 201, 214 (1979). "No litigant, even a defendant in a criminal case, will be permitted to approbate and reprobate-to invite error . . . and then to take advantage of the situation created by his own wrong." *Fisher v. Commonwealth*, 236 Va. 403, 417 (1988).

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*