UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Chaney and Senior Judge Annunziata

KELLY MICHAEL VANCE

v.      Record No. 1415-22-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
JULY 5, 2023

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge

(Andrew S. Gordon, Senior Assistant Public Defender, on brief), for
appellant.

(Jason S. Miyares, Attorney General; Mason D. Williams, Assistant
Attorney General, on brief), for appellee.

Upon his guilty plea, the trial court convicted Kelly Michael Vance of second-degree

murder and sentenced him to 40 years of incarceration. On appeal, Vance contends that "[t]he

trial court erred in abusing its discretion and imposing forty (40) years of incarceration with no

time suspended." After examining the briefs and the record, we have determined that oral

argument in this appeal is not necessary because this "appeal is wholly without merit." Code

§ 17.1-403(ii)(a); Rule 5A:27(a). Consequently, we affirm the judgment of the trial court.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial." *Scott v.

Commonwealth*, 292 Va. 380, 381 (2016).

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

At a plea hearing on April 26, 2022, the Commonwealth proffered, without objection, the following facts. At approximately 4:45 p.m. on June 19, 2019, Vance entered a dental office in Newport News and asked the receptionist if the dental practice accepted AFLAC insurance. While the receptionist was speaking with Vance, Dr. William Trolenberg walked down the hallway and asked if he could help. The receptionist informed Dr. Trolenberg that Vance had asked whether they took Vance's insurance, and, subsequently, Dr. Trolenberg "went about his business." Vance then took a business card and left the office. Dr. Trolenberg left the office around 5:00 p.m., setting the office alarm system before running to his car to get out of the heavy rain.

Footage taken from a nearby surveillance camera showed Dr. Trolenberg running to his car. Vance had been waiting outside the dental office. As Dr. Trolenberg began backing out of his parking spot, Vance stopped him, and Dr. Trolenberg let Vance get into the front passenger seat of his vehicle. Minutes later, a gunshot can be heard on the surveillance footage, and Dr. Trolenberg opened his door and fell to the pavement. Vance exited the car, walked to the other side, and shot Dr. Trolenberg again as Dr. Trolenberg attempted to crawl away. Vance then fled the scene, running between nearby houses. Dr. Trolenberg later died at the hospital from the gunshot wounds.

Dr. Elizabeth Kinnison conducted an autopsy on Dr. Trolenberg and confirmed that he had been shot twice in the head. One shot was fired at close-range and caused serious vascular damage but no definitive brain injuries. The other shot, which was fired from a greater distance, entered the left side of Dr. Trolenberg's head and exited his right ear, causing his death.

Vance intelligently, freely, and voluntarily pleaded guilty to second-degree murder. The trial court conducted a thorough plea colloquy during which Vance acknowledged that he understood that he faced a maximum 40-year sentence with no parole for his conviction and that

the trial court could deviate from the sentencing guidelines. The trial court found Vance guilty of second-degree murder based on his plea and the proffered evidence.

At Vance's sentencing hearing, Dr. Trolenberg's family and friends expressed their heartache and deep sorrow over Dr. Trolenberg's murder. Several family members provided photos of memorable occasions. They described him as kind, generous, loving, and hardworking. They expressed that he was a leader and mentor to his family and friends and that he loved learning and engaging with others. His sister told the trial court, "[T]he lives of nearly everyone in this [court]room and many more who cannot be here today were forever changed" by this senseless murder. Dr. Trolenberg's eldest daughter stated that the greatest impact of his murder was that her son would never know his grandfather. His mother stated that when she thinks about how her son died, it still haunts her every day. Dr. Trolenberg's wife described her feelings as she continues to live as a widow after her husband's death as "[p]ainful" and "[e]mpty." Furthermore, since his death, Dr. Trolenberg's family and friends have experienced stress, anxiety, and fear.

Vance testified in his own behalf at his sentencing hearing. He explained that his father was in the military and was often away from home working or on deployment. He described his stepmother as emotionally abusive and said that he spent most of his childhood caring for his younger stepbrothers. After graduating high school, Vance joined the Navy and was deployed to numerous locations. He expressed that he had some setbacks within his career because he failed to obey orders and had marital problems. Vance underwent a mental health evaluation, which indicated a potential diagnosis of adjustment disorder, with anxiety and depression. Vance was honorably discharged from the military.

After he left the military, Vance became involved with a woman named Jennifer Ruiz. They began planning an international vacation together (although Vance admitted that he had

lied to Ruiz about his intentions because he had never intended to go).  Vance promised to provide her with financial support for the vacation, but he did not actually have the money to pay for the trip.  Consequently, on June 19, 2019, the day before they were supposed to leave, Vance stated, "I was kind of panicking because I didn't have the money to go on this trip."  He said that he got in his car and drove to Newport News without a plan but thought that "[m]aybe a good samaritan" would lend him the money.

After making a stop at a garden center in Newport News, he ended up at the dental practice, went inside, and took notice of Dr. Trolenberg (a man he had never even heard of before) because "he seem[ed], like, a nice person."  He stated that after Dr. Trolenberg allowed him into the vehicle to get out of the heavy rain, he asked Dr. Trolenberg for the money.  Vance stated, "[H]e [Dr. Trolenberg] . . . put his right hand on . . . my thigh."  Vance said that this caused him to become concerned, so he pulled out his gun.  He stated that Dr. Trolenberg then became angry and asked Vance if Vance was going to shoot him.  Vance said he pulled the trigger and that his mind was "still kind of hazy" about what happened.  He admitted that he then exited the vehicle and shot Dr. Trolenberg again.

The Commonwealth argued that under the circumstances of this case "there's no reason to deviate from the maximum" sentence of 40 years of imprisonment.  The Commonwealth further asserted that the guidelines are voluntary and that the guidelines do not account for the egregious and shocking nature of the crime.  The Commonwealth emphasized that Dr. Trolenberg's family, friends, and employees suffered a painful loss.  Although Vance had no prior criminal history, his actions were unpredictable, and the crime was heinous.

Vance argued that he should be sentenced within the guidelines, which recommended a range between 12 years and 9 months of incarceration and 21 years and 4 months, because he had no criminal record.  He also emphasized he had honorably served his country in the military.

- 4 -

Furthermore, he emphasized that "he likely had some mental health issues for which he did not receive adequate treatment." Finally, he emphasized that he had not planned to attack Dr. Trolenberg and that he had accepted responsibility for his actions and had expressed remorse to the family.

The trial court then sentenced Vance to 40 years of incarceration "after taking into consideration the nature of this charge, the facts and circumstances as presented in the recitation of the facts, the presentence investigation and report, taking into consideration the sentencing guidelines, all of the evidence and testimony that has been elicited today, and your [Vance's] allocution." Vance now appeals to this Court.

ANALYSIS

On appeal, Vance contends that the trial court abused its discretion by imposing a 40-year sentence with no time suspended. "We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011).

"[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). Furthermore, the sentencing guidelines are only a tool for the trial court and are not binding. "The sentencing guidelines are advisory only and do not require trial courts to impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). "[T]he recommended sentencing ranges contained in these discretionary guidelines are not binding on the trial judge but, rather, are mere tools to be used by the judge in fixing an appropriate sentence within the limitations established by the statute governing punishment for the particular crime." *Luttrell v. Commonwealth*, 42 Va. App. 461, 465 (2004).

Here, the trial court convicted Vance of second-degree murder—the maximum sentence for which is 40 years of incarceration. *See* Code § 18.2-32. The trial court sentenced Vance to 40 years of imprisonment, which clearly does not exceed that maximum. *See Minh Duy Du*, 292 Va. at 564. Consequently, the trial court did not abuse its discretion.

Vance also argues that the trial court failed to properly weigh his mitigating evidence. However, it was within the trial court's purview to weigh any mitigating factors Vance presented. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). The record affirmatively demonstrates that the trial court considered all of the evidence before it, including Vance's mitigation evidence (e.g., lack of prior criminal history) and his allocution.[1] However, the trial court weighed more heavily the heinous nature of the crime and Vance's history of deception. Here, the evidence showed that Vance had sought out a person at random whom he could con into giving him some money. When Dr. Trolenberg did not immediately give Vance the money, Vance took out a firearm and shot Dr. Trolenberg in the head. Then, as the badly wounded Dr. Trolenberg tried to crawl away from his car, Vance got out of the car, walked around to the other side of the vehicle, and shot Dr. Trolenberg in the head for the second time—killing him.

Given the severity of the aggravating factors in this case and given that Vance's sentence was within the statutory range set by the legislature, we do not disturb the trial court's sentencing decision. *See* Code § 18.2-32; *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) ("[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." (quoting *Minh Duy Du*, 292 Va. at 565)).

---

[1] To the extent Vance contends that the trial court abused its discretion by considering facts not in evidence, we note that he did not preserve his argument for appeal and does not invoke the ends of justice exception to Rule 5A:18. This Court will not apply this exception sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc). Consequently, Rule 5A:18 bars our consideration of this portion of Vance's argument on appeal.

CONCLUSION

For all of these reasons, we affirm the trial court's judgment and sentencing decision.

*Affirmed.*