COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Malveaux and Duffan
Argued at Richmond, Virginia


DYLAN LINDSEY, S/K/A
  DYLAN MICHAEL LINDSEY

v.      Record No. 2051-24-2

COMMONWEALTH OF VIRGINIA                    MEMORANDUM OPINION[*] BY
                                            JUDGE KEVIN M. DUFFAN
DYLAN LINDSEY, S/K/A                        MARCH 17, 2026
  DYLAN MICHAEL LINDSEY

v.      Record No. 0072-25-2

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

Catherine French Zagurskie, Chief Appellate Counsel (Kelsey
Bulger, Deputy Appellate Counsel; Virginia Indigent Defense
Commission, on briefs), for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Jason S.
Miyares,[1] Attorney General, on brief), for appellee.


    In these consolidated appeals, Dylan Michael Lindsey contends that the trial court erred

by prohibiting him, as a condition of his suspended sentence, from having contact with his

six-year-old daughter.  We affirm.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND[2]

"We recite the facts in the light most favorable to the Commonwealth, the prevailing party below." *Johnson v. Commonwealth*, 85 Va. App. 257, 266 (2025) (quoting *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc)). In doing so, we discard any evidence that conflicts with the Commonwealth's evidence and regard as true all the credible evidence favorable to the Commonwealth and all inferences that can be fairly drawn from that evidence. *Id.*

In June 2024, Lindsey and the Commonwealth entered into a written plea agreement whereby Lindsey agreed to plead guilty to two counts of possessing child pornography and five counts of possessing images involving bestiality. The agreement provided that "any active period of incarceration imposed by the [trial c]ourt shall be within the sentencing [guideline] range prepared" as part of the presentence report. Lindsey also "agree[d] to give up the right to ask the [c]ourt for sentence modification under Virginia Code Section 19.2-303, unless agreed to by the Commonwealth." Finally, the parties agreed to move jointly that a psychosexual evaluation be prepared before sentencing.

Lindsey pleaded no contest to the seven charges. After conducting a thorough plea colloquy, the trial court determined that Lindsey, with full knowledge and understanding of the contents and implications of the plea agreement, entered his plea freely, voluntarily, and intelligently. The Commonwealth proffered that the police searched Lindsey's cell phone while executing a search warrant on an "unrelated matter" at his Chesterfield County residence. On the phone, the police found two images of prepubescent children "engaged in sexual contact; toddler to preteen age" and five images of "individuals having sexual contact with animals." On that

---

[2] "Although parts of the record are sealed, this appeal requires unsealing certain portions to resolve the issues raised by [Lindsey]. To the extent that certain facts are found in the sealed portions of the record, we unseal those portions only as to those specific facts mentioned in this opinion." *Khine v. Commonwealth*, 75 Va. App. 435, 442 n.1 (2022). "The rest remains sealed." *Id.*

evidence, the trial court found Lindsey guilty of the seven offenses, ordered a psychosexual evaluation, and continued the matter for sentencing.

Dr. Evan Nelson conducted the psychosexual evaluation, which the trial court received at the sentencing hearing. Despite telling Dr. Nelson that he "ha[d] been living with his girlfriend for years" at his grandmother's house, Lindsey could not provide valid phone numbers for either his girlfriend or grandmother, which Dr. Nelson found "suspicious." Although Lindsey had held entry level jobs, he was fired from all of them because of his "anger" issues, which he admitted were "so out of control, it wasn't even funny." Thus, Lindsey was unemployed at the time of the offense and evaluation and relied on disability checks because of his mental illness. As he told Dr. Nelson, "I just basically stay at home all day, I just choose to stay at home [be]cause it's less problems."

According to Dr. Nelson's report, "[t]he pornography offenses were detected after . . . Lindsey bragged online during sexting with a supposed 17-year-old girl that he molested his [then] 5-year-old daughter." According to the police report, Lindsey told the minor that he had sexual interest in underage females and sent her a picture of an erect penis. The police report further recited that Lindsey told the minor that he "ha[d] access to a five-year-old girl who he previously sexually assaulted and plan[ned] to do so again," and specifically claimed to have "rubbed [the five-year-old's] vagina" "earlier in the day." Lindsey further texted that "when her mom goes to work in a few I might lick her and try to fuck her a little," and agreed to call the teenager "on video chat" so she could watch. Lindsey admitted to Dr. Nelson that he wrote those words about his five-year-old daughter but denied that he committed the acts that he wrote about, stating, "I have no idea why I said that." The criminal charges against Lindsey for molesting his daughter were nolle prossed because the victim was uncooperative. Lindsey denied to Dr. Nelson that he had sexual interest in his daughter or any other children.

As a condition of his pretrial bond, Lindsey could have contact with his daughter but only with adult supervision. Lindsey told Dr. Nelson that, "[t]o accomplish that" condition, "he lived in a camper in his grandmother's yard for a while." After some time, however, Lindsey moved back into the house, because as he claimed, his lawyer told him doing so was acceptable as long as he and his daughter had separate bedrooms. When Dr. Nelson asked Lindsey if he had a formal safety plan, Lindsey responded that "there were no special rules" but that he "always ensure[d] another adult [was] around so he was not alone with his daughter." In the presentence report, however, Lindsey wrote, "I take care of my daughter while her mother works."

Lindsey claimed to suffer "from almost every fake symptom that was put to him," which led Dr. Nelson to conclude that "his self-report of mental illness [was] not reliable." Lindsey claimed that he was sexually abused by two older boys when he was a child. He also had an unadjudicated allegation of a sex offense while a juvenile.

Lindsey denied that he knowingly possessed child pornography, claiming that the child pornography images found on his phone depicted adult women, not children. He also asserted that he did not know it was illegal to possess images of bestiality, which he looked at out of curiosity and amusement. He admitted that pornography was "a daily activity that consumed his free time" and that he masturbated to pornography seven or eight times per day.

In his report, Dr. Nelson wrote that Lindsey's situation "point[ed] to more risk" because he was detected while "sexting with a minor, a female who claimed to be 17 years old—so he was making contact with a minor." Moreover, the fact that Lindsey knew "he had that deviant fantasy and was willing to endorse it to a minor is a clue that he has issues related to greater risk than the typical child pornography offender, who wants to explore deviant materials in isolation with no bleed-over into reality, like their daughter, for example." Dr. Nelson was further "troubled by the

- 4 -

lack of a formal home safety plan" to ensure that Lindsey "does not act on fantasies about molesting his daughter."

Considering all the surrounding circumstances, Dr. Nelson concluded that Lindsey was at "substantially above-average risk" for reoffending and that "Lindsey's willingness to publicly declare he has molested his daughter and was willing to do so again should be taken as a sign of the potential for Pedophilic Disorder, and that he poses a risk to his daughter." Dr. Nelson recommended that the trial court order a "formal safety plan" agreed to by Lindsey, his family, his probation officer, and therapist before allowing him to continue to reside with his daughter.

The sentencing guidelines recommended a range of active incarceration between three and six months. Lindsey asked for an active sentence of six months of home electronic monitoring, stressing that his family was supportive and he had no prior criminal record. In allocution, Lindsey told the court that he was "very sorry for what [he] did."

The trial court stated that it would not have accepted the plea agreement had it known the level of risk Lindsey presented and the "reasons therefore as expressed in the psychosexual evaluation." To "mitigate the risk," yet impose a sentence in accordance with the plea agreement, the trial court sentenced Lindsey to a total of 15 years of incarceration with all but 6 months suspended. As a condition of Lindsey's probation and suspended sentence, the trial court ordered him to have no contact with his child and no unsupervised contact with any other minors.

Lindsey conceded that the sentence complied with the plea agreement but objected to the condition mandating no contact with his daughter, arguing there were "no charges relat[ing] to" her. He asserted that the "whole family" lived together and that "child safety can be adequately maintained by the family being there." The trial court responded that Lindsey's "own statements belie[d] that" assertion and overruled the objection. The court noted, however, that it would review

the issue if timely raised in a post-sentencing motion. The trial court entered the sentencing order on November 14, 2024.

On November 21, 2024, Lindsey filed a "Motion to Reconsider Terms of Sentence," asserting for the first time that the no-contact condition violated his constitutional due process rights. Lindsey asked the trial court to amend the condition to permit supervised contact with his daughter. The Commonwealth opposed the motion. The court held a hearing on November 27, 2024, at which Lindsey advanced his constitutional argument.

Following the arguments, the trial court found that Lindsey's motion was properly construed as a motion to modify his sentence under Code § 19.2-303, not a motion to reconsider. The court noted that Lindsey had expressly agreed in the plea agreement to waive his right to seek modification of his sentence unless the Commonwealth agreed with the modification. The court denied Lindsey's motion "[o]n that singular basis." But, "assuming [it] [wa]s incorrect" that Lindsey's motion should be considered a motion for modification, the court found that, considering all the facts and circumstances and the findings in the psychosexual evaluation, the no-contact condition was "absolutely necessary and appropriate." In making that finding, the court noted Lindsey's comment in the presentence report that he was the child's caregiver when the child's mother was at work, Dr. Nelson's opinions that Lindsey struggled with self-control and posed a risk to his daughter, and Lindsey's texts that he had molested his daughter and would do so again. The court memorialized its ruling in a written order dated December 13, 2024. These appeals followed.[3]

---

[3] Lindsey noted his appeal from the November 14, 2024 sentencing order, which the Clerk of our Court assigned Record No. 2051-24-2. Lindsey also noted an appeal from the trial court's December 13, 2024 denial of his motion to reconsider; the Clerk of our Court assigned that appeal Record No. 0072-25-2.

ANALYSIS

"Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016). "The sometimes conflicting penological goals involved in such decisions defy precise measurements." *Id.* "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* For these reasons, determining the sentence "lies within the sound discretion of the trial court. A sentencing decision will not be reversed unless the trial court abused its discretion." *Garibaldi v. Commonwealth*, 71 Va. App. 64, 67 (2019) (quoting *Martin v. Commonwealth*, 274 Va. 733, 735 (2007)). "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). The abuse-of-discretion standard encompasses review of the "conditions of probation imposed by a trial court as part of its sentencing determination." *Murry v. Commonwealth*, 288 Va. 117, 122 (2014).

*Record No. 2051-24-2*

Lindsey's primary argument on appeal is that the prohibition of contact with his child as a condition of his suspended sentence was unreasonable. It is well-settled that after a criminal conviction, the trial court "may suspend imposition of sentence or suspend the sentence in whole or part and in addition may place the defendant on probation under such conditions as the court shall determine." Code § 19.2-303. "[A] sentencing court has broad discretion to impose reasonable special conditions of probation and suspension that are tailored to the unique circumstances of a

case." *Commonwealth v. Delaune*, 302 Va. 644, 657 (2023). "Absent an alleged statutory or constitutional violation, '[t]he sole statutory limitation placed upon a trial court's discretion in its determination of such conditions is one of reasonableness.'" *Id.* (alteration in original) (quoting *Minh Duy Du*, 292 Va. at 563). That is, "[p]robation conditions must be reasonable in light of the nature of the offense, the defendant's background, and the surrounding circumstances." *Id.* at 658 (quoting *Murry*, 288 Va. at 122).

Lindsey was convicted of possessing child pornography images involving prepubescent children. He also admitted to having a graphic sexual conversation online with someone he believed to be a 17-year-old girl, in which he bragged that he had sexually molested a five-year-old child, would do so again, and even invited the teenager to watch him livestream it. Although Lindsey lived with other adults, he did not work and admitted that he spent his time at home all day watching pornography and masturbating. Dr. Nelson concluded in his evaluation report that Lindsey was at substantially above-average risk for deviant behavior and that his daughter was a potential victim.

Despite those concerns, there was no evidence of a formal plan to protect Lindsey's daughter, but only a vague notion that an adult would always be available to supervise contact between them. The trial court had reason to be concerned that Lindsey would not comply with a supervised-contact condition. That specific condition was part of Lindsey's pretrial bond, yet Lindsey continued living in the same house with his daughter and wrote in the presentencing report that he took care of his daughter when her mother was at work, and Lindsey could not provide Dr. Nelson with valid phone numbers for the two adults who presumably would be tasked with supervising him. Lindsey raises the argument that because the trial court allowed him supervised contact with other minors, the court's no-contact condition with his own daughter was unreasonable. This argument seemingly ignores the comments Lindsey made regarding his

- 8 -

daughter, how he has molested her and would be willing to molest her in the future, and his proximity and unsupervised access to her. The sentencing provision appeared to be specifically tailored by the trial court in light of Lindsey's offenses, background, and surrounding circumstances, and thus it was reasonable. *See id.*

Lindsey also argues that the no-contact condition violates his constitutional rights. Lindsey did not preserve that argument in Record No. 2051-24-2. Although Lindsey objected when the trial court imposed the condition at the sentencing hearing, the sole bases for his objection were that his criminal charges were unrelated to his daughter and that other adults lived in the home and could protect the child. He did not at that time claim that the condition was unconstitutional.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. The rule's purpose is to "afford[] 'the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 236 (2022) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity." *Id.*; *see Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010) (explaining that a specific, contemporaneous objection "must be made . . . *at a point in the proceeding* when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error" and that "a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection *at that stage of the proceeding*" (alteration in original) (emphases added)). If a party fails to timely and

specifically object, he waives his argument on appeal. *Arrington v. Commonwealth*, 53 Va. App. 635, 641 (2009). Rule 5A:18 applies to bar even constitutional claims. *Clark v. Commonwealth*, 78 Va. App. 726, 767 (2023).

By failing to argue at his sentencing hearing that the no-contact condition violated his constitutional rights, Lindsey has waived that argument in Record No. 2051-24-2. Lindsey asserts that this Court should consider the claim under the ends of justice exception to Rule 5A:18. "The ends of justice exception is narrow and is to be used sparingly." *Conley v. Commonwealth*, 74 Va. App. 658, 682 (2022) (quoting *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc)). It "applies only in the extraordinary situation where a miscarriage of justice has occurred." *Id.* "Applying the exception is appropriate when there is error as contended by the appellant and when the failure to apply the exception would result in a grave injustice." *Hicks v. Dir., Dep't of Corr.*, 289 Va. 288, 296 (2015).

The Supreme Court of the United States has recognized a parent's fundamental right "to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion). Assuming without deciding that the ends of justice exception could apply when the trial court's sentence affects a fundamental right, "[i]nherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.'" *Murry*, 288 Va. at 123 (quoting *United States v. Knights*, 534 U.S. 112, 119 (2001)). Even the out-of-state cases cited by Lindsey conclude that "probation conditions that limit a sex offender probationer's right to familial association with their own children" can be constitutional if "supported by specific findings regarding the compelling circumstances that justify the limitation." *Salah v. People*, 550 P.3d 698, 706 (Colo. 2024).

Lindsey made comments that he molested his daughter and would do so again when her mother was gone.[4]  Later, Lindsey denied molesting his daughter and claims that he was lying when he previously stated that he had.  In considering those comments, we are mindful of the requirement that "[t]he record 'must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred.'"  *Hines v. Commonwealth*, 59 Va. App. 567, 572 (2012) (quoting *Akers v. Commonwealth*, 31 Va. App. 521, 527 n.2 (2000)).  Ultimately, we conclude that the record does not affirmatively demonstrate that prohibiting contact between Lindsey and his daughter would be a grave injustice.  Accordingly, Rule 5A:18 bars our consideration of this portion of Lindsey's argument on appeal.

*Record No. 0072-25-2*

Finally, Lindsey contends that the trial court erred by denying his motion to reconsider the no-contact condition and amend it to allow adult supervised contact.  Lindsey does not assign error to the trial court's ruling denying the motion "[o]n th[e] singular basis" that Lindsey, by entering the plea agreement, expressly waived his right to seek a sentence modification under Code § 19.2-303.

"It is well-settled that a party who challenges the ruling of a lower court must on appeal assign error to each articulated basis for that ruling."  *Ferguson v. Stokes*, 287 Va. 446, 452 (2014) (quoting *Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 421 (2012)).  Accordingly, if there are alternative holdings on an issue, "the appellant's 'failure to address one of the holdings results in a waiver of any claim of error with respect to the court's decision on that issue.'"  *Johnson v. Commonwealth*, 45 Va. App. 113, 116 (2005) (quoting *United States v. Hatchett*, 245 F.3d 625, 644-45 (7th Cir. 2001)).  Otherwise, a dissatisfied appellant could "avoid

---

[4] That fact distinguishes this case from some of the cases on which Lindsey relies.  *See, e.g.*, *United States v. Davis*, 452 F.3d 991, 995 (8th Cir. 2006) (finding a no-contact condition unconstitutional because there was "no evidence in the record that [the defendant] ha[d] ever sexually abused a child or that he would try to abuse his daughter once released from prison").

the adverse effect of a separate and independent basis for the judgment by ignoring it and leaving it unchallenged." *Id.* at 116-17 (quoting *San Antonio Press v. Custom Bilt Mach.*, 852 S.W.2d 64, 65 (Tex. App. 1993)).

Nonetheless, "we still must satisfy ourselves that the alternative holding is indeed one that (when properly applied to the facts of a given case) would legally constitute a freestanding basis in support of the trial court's decision." *Id.* at 117. "[I]n making that decision, we do not examine the underlying merits of the alternative holding—for that is the very thing being waived by the appellant as a result of his failure to raise the point on appeal." *Id.*

In the plea agreement, Lindsey agreed to waive several rights, including the right to ask for a sentence modification under Code § 19.2-303. The trial court ruled that Lindsey's motion requested just that relief. And the trial court made clear that it was denying Lindsey's motion solely based on waiver and addressed the merits of Lindsey's argument only to create a record in case its waiver conclusion was incorrect. Lindsey does not challenge that ruling on appeal.[5] His failure to challenge the trial court's alternative legal basis for denying his motion for modification bars our consideration of his claim that the trial court erred in ruling that the no-contact condition was necessary and appropriate under the circumstances.

CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[5] In fact, Lindsey writes that, "[a]lthough [he] argued otherwise below, this Court could agree with the trial court" that "the motion was brought under Code § 19.2-303." The closest Lindsey comes to challenging the trial court's waiver ruling is to note merely that the Commonwealth did not object to the court hearing the motion. That statement, without more, is insufficient to challenge the trial court's ruling. *See* Rule 5A:20(e) (requiring "principles of law and authorities").